UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DENNIS G. COLLINS, SUZANNE J
COLLINS, DAVID BUTLER, LUCIA BOTT,
and all others similarly situated,

    Plaintiffs,

v.

METROPOLITAN LIFE INSURANCE
COMPANY,

    Defendant.

Case No. 4:22-Cv-00129

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT

Defendant Metropolitan Life Insurance Company ("MLIC") respectfully submits this Memorandum in Support of its Motion to Dismiss Plaintiffs' Complaint (the "Complaint," cited as "Compl.") pursuant to Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

Plaintiffs Dennis and Susan Collins, David Butler and Lucia Bott (collectively, "Plaintiffs") have brought an ambitious purported nationwide class action complaining that MLIC designed and filed with its insurance regulators long-term care ("LTC") insurance policy inflation protection riders that it knew were underpriced, but that would allow MLIC to seek and obtain significant future premium rate increases from those regulators.  (*See, e.g.*, Compl. ¶¶ 41-48). Plaintiffs do not claim that MLIC charged them anything different or more than the rates that were specifically submitted to, and accepted by, MLIC's regulators.  Instead, Plaintiffs claim they were injured by MLIC's statement in the rider that the inflation protection it provided was not "expected" to cause their premium rates to increase.  (*Id.* at ¶¶ 49-50).  On that basis, Plaintiffs

have asserted claims for common law fraud (Count I), fraudulent concealment (Count II), violation of state consumer unfair and deceptive practices protection acts (Count III) and breach of the implied covenant of good faith and fair dealing (Count IV).

All of Plaintiffs' claims should be dismissed pursuant to Fed R. Civ. P. 12(b)(6).  Their claims are barred as a matter of law by the filed-rate doctrine.  That doctrine dictates that the premium rates an insurer files with its regulators – including rates for riders associated with their policies – are not subject to collateral attack and second-guessing in private civil actions. Plaintiffs' claims amount to nothing more than a thinly veiled attack on the rates filed with, and accepted by, state insurance regulators.  This case is exactly the type of collateral attack that courts have rejected, on the grounds that it seeks to second-guess a regulator's actions and expertise, both on rate-making and the underwriting and actuarial assumptions supporting the proposed rates. These claims are barred by law and cannot proceed here. [1]  Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing should also be dismissed because Plaintiffs have not identified any specific contract provision that they contend was breached by MLIC.

Plaintiffs' central theory – that MLIC offered inflation protection riders knowing that they provided unnecessary increases in coverage, in the hopes that years later independent regulators around the country would accept rate increases – is patently implausible.  LTC rate increases require regulator acceptance which is provided *only* where the claim and loss experience on the policies differs materially from the insurers' expectations as set forth in its filed rates. Regulators will not accept increases in rates based solely on the accumulation of additional benefits that were

---

[1] The named plaintiff in a class action cannot proceed with such an action if his own claims are subject to dismissal.  *See, e.g., In re Milk Prod. Antitrust Litig.*, 195 F.3d 430, 436 (8th Cir. 1999) (If named plaintiffs lacks the ability to pursue their claim as an individual, the class claims necessarily fail); *Rector v. City & County of Denver*, 348 F.3d 935, 950 (10th Cir. 2003).

a known policy benefit at the time the initial rates were filed.  MO. CODE REGS. ANN tit. 20, §§ 400-4.100 (18); ILL. ADM. CODE tit. 50 § 2012.112.  Further, rate increases are often denied by regulators – even when actuarially justified – which makes the entire premise of Plaintiffs' alleged "scheme" non-sensical.  Moreover, the policies expressly state that rates are not guaranteed.  Even accepting the allegations as pled, dismissal of each of Plaintiffs' causes of action is warranted because these claims are all barred by the filed-rate doctrine.

## SUMMARY OF ARGUMENT

LTC insurance is regulated by state regulators across the country. MLIC is permitted to charge its policyholders only those rates it files with state insurance departments.  Under longstanding and established law, those rates cannot be second-guessed in private civil actions against the insurer who submitted, justified, and was authorized to charge those very rates. Importantly, and dispositive here, Plaintiffs do not (and could not) allege that MLIC did not file the challenged inflation protection rider rates with the applicable state insurance regulators or that the rates were not reviewed or accepted by those regulators.

To the contrary, and as admitted in the Complaint, the policies held by Plaintiffs were issued in Missouri and Illinois, both of which have adopted substantial LTC insurance regulations requiring that insurers file initial rates and rate increase requests with their respective departments of insurance. MO. CODE REGS. ANN. tit. 20, §§ 400-4.100 (8), (18); ILL. ADM. CODE tit. 50 §§ 2012.64, 2012.112. In addition, and importantly, the inflation protection rider at issue in this case is a *mandatory* LTC option that MLIC, as a regulated LTC insurance provider, was *required* to offer its LTC customers under Missouri and Illinois regulations. MO. CODE REGS. ANN. tit. 20, § 400-4.100(11)(A); ILL. ADM. CODE tit. 50 § 2012.80(a).  These riders thus were not a creation of MLIC, belying the notion that they were somehow offered as part of a scheme.

3

As part of the initial rate filing for the policies and riders that Plaintiffs purchased, MLIC was required to provide the regulators its proposed rates and an actuarial memorandum justifying those rates (including the rates for the inflation riders).  MLIC was further required to provide the regulators a basis for its "expectation" that the proposed premiums were set at a rate that would not require future rate increases.  MLIC was also required to submit its policy forms – including the specific inflation rider form (and the specific rider language) at issue in this case – for regulator review.  There is no suggestion – nor could there be – that MLIC skipped any of these steps, and in fact the very materials submitted are referenced in the Complaint.  As the United States Supreme Court, the United States Court of Appeals for the Eight Circuit and many other courts have recognized, this regulatory process establishes the lawfulness of the rates charged.  Consumers cannot later bring claims for economic injury related to those rates in the face of this well-established doctrine.  *American Tel. and Tel. Co. v. Central Office Tele., Inc.* 524 U.S. 214, 226-27 (1998) (filed-rate doctrine protects the notion that rates reviewed and accepted by regulatory agencies are lawful and that a party's recourse is with that agency not through tortious claims); *H.J. Inc. v. Northwestern Bell Telephone Co.*, 954 F.2d 485, 488 (8th Cir. 1992) ([T]he underlying conduct does not control whether the filed rate doctrine applies. Rather, the focus for determining whether the filed-rate doctrine applies is the impact the court's decision will have on agency procedures and rate determinations.").

Although Plaintiffs have tried to plead around the filed-rate doctrine by claiming they are challenging an alleged misrepresentation, the misrepresentation they allege is that MLIC falsely asserted that it "expected" its filed rates would remain constant.  That "expectation," however, was an express part of what MLIC was required to justify to the regulators at the time of its initial filings, and an integral part of what the regulators ultimately accepted.  Thus, regardless of how

4

Plaintiffs' attempt to cast it, Plaintiffs' claim that MLIC "lied" to regulators, by purportedly proposing what it knew was an unsustainable premium rate, is clearly just an attack on both the regulatory filing itself and the regulators' acceptance of that filing.

With respect to the products at issue here, each department of insurance was provided with, and reviewed, the actuarial assumptions associated with the increasing benefits and the related premiums for the riders, and in accepting those filings from MLIC *agreed* with MLIC that the riders should not be expected to require increased premiums.

Importantly, it does not matter for purposes of the filed-rate doctrine that Plaintiffs claim that MLIC misrepresented the sustainability of the accepted rates.  It is well settled that even "fraud" is not an exception to the filed-rate doctrine.  *See Horwitz ex rel. Gilbert v. Bankers Life & Cas. Co.*, 745 N.E.2d 591, 605 (Ill. Ct. App. 2001) (Reasoning that "[b]ecause the damages sought by plaintiff for consumer fraud would require the court to ascertain what would be a reasonable rate absent the [alleged] fraud," the filed-rate doctrine barred plaintiff's fraud claims) (quotations omitted); *Bauer v. Sw. Bell Tel. Co.*, 958 S.W.2d 568, 570 (Mo. Ct. App. 1997) ("Courts that have considered the fraud issue almost unanimously have 'rejected the notion that there is a fraud exception to the filed-rate doctrine.'") (citing *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 20 (2d Cir.1994)).

Finally, as one Federal court already has concluded in assessing a similar argument regarding a virtually identical inflation benefit rider, Plaintiffs' request for a refund of premiums for insurance coverage they have been receiving for more than 14 years would obviously put them in a far different and far more advantageous position than policyholders who either have not sued or who did not purchase the same rider as Plaintiffs, *i.e.,* retroactively providing them free or "under-priced" coverage.  *Gunn v. Cont'l Cas. Co.*, No. 18 C 3314, 2019 WL 10271173, at *2-3

(N.D. Ill. Sept. 3, 2019), *rev'd and remanded on other grounds*, 968 F.3d 802 (7th Cir. 2020). This directly implicates the policy of "non-discrimination" which (among other things) underlies the filed-rate doctrine as explained further below.

**PLAINTIFFS' ALLEGATIONS AND BACKGROUND ON MLIC'S LTC FILINGS IN MISSOURI AND ILLINOIS.**

**A.     General Allegations.**

MLIC was required by Missouri and Illinois regulations to offer all policyholders the option to purchase an inflation protection rider that increases the policyholder's available benefits by 5% annually at a premium rate that MLIC expected would not increase under its expected claim experience.  Plaintiffs claim that MLIC misled them by including language in its required inflation protection benefit rider ("Inflation Rider") – consistent with the applicable regulations - that the annual increased benefits associated with the Inflation Rider were not expected to increase Plaintiffs' premiums and that Plaintiffs would not be charged a corresponding annual increase in premium for the annual increase in benefits provided. (Compl. ¶¶ 5, 42-44).  At the core of Plaintiffs' Complaint is the contention that those statements were "lies" because MLIC purposefully designed the policies to accumulate worthless coverage that would secure significant projectable losses necessitating future rate increases.  (Compl. ¶¶ 6, 45-46).

Plaintiffs allege that MLIC "always knew" that it would be able to levy significant, future, class-wide premium increases directly related to the increased future daily benefit amount provided by the Inflation Rider. (Compl. ¶ 70).  This is implied because MLIC knew how future rate increases would be calculated (and evaluated by regulators) and that future daily benefit amount increases would result in the availability of ever greater benefits that would make the filed rates unsustainable.  (Compl. ¶¶ 56-57).

**B.      Illinois and Missouri Require LTC Insurers to File Rates and Have Implemented Comprehensive LTC Insurance Regulations.**

Missouri and Illinois law both requires insurers to file all classifications, rules, rates, rating plans and modifications of the foregoing that an insurer uses and the policies and form to which the filed rates are applied.  Mo. Rev. Stat § 379.321; ILL. ADM. CODE tit. 50 §§ 754.30, 754.40. Missouri and Illinois regulators possess discretionary enforcement powers to correct for violations of insurance laws or unfair rates charged.  Missouri specifically empowers regulators to "examine and inquire into all violations of the insurance laws of the state and inquire into and investigate the business of insurance transacted in this state by any insurance agent, broker, agency or insurance company." Mo. Rev. Stat § 374.190.  Regulators in both states are also given the *exclusive* power to enforce the State's regulation of insurance rates.  If the regulator believes that a violation of these laws or regulations has occurred, then he or she may sanction the insurer by requiring them to cease using the improper rate, imposing a penalty and/or suspending their license to do business in the state.  Mo. Rev. Stat § 379.361; 215 Ill. Comp. Stat. Ann. 5/401, 5/407.2.

Based on these statutory grants of authority, the regulators in both states have issued regulations, modeled after the Long Term Care Insurance Model Regulation developed by the National Association of Insurance Commissioners, that provide strict requirements for rate filing. Accordingly, both states require insurers to file an actuarial memorandum with state regulators, describing in detail the actuarial methods and pricing assumptions used in determining rates.  MO. CODE REGS. ANN. tit. 20, § 400-4.100(8); ILL. ADM. CODE tit. 50 § 2012.64(b)(3).

And specific to inflation protection riders, Missouri and Illinois LTC regulations further require that LTC providers offer the policyholders the option to purchase a policy that provides for benefit levels to increase "annually in a manner so that the increases are compounded annually at a rate not less than five percent (5%)." MO. CODE REGS. ANN. tit. 20, § 400-4.100(11)(A)(1);

ILL. ADM. CODE tit. 50 § 2012.80(a)(1).  The regulations also require that any such inflation protection include "an offer of a premium which the insurer expects to remain constant." MO. CODE REGS. ANN. tit. 20, § 400-4.100(11)(F); ILL. ADM. CODE tit. 50 § 2012.80(f).

### C.     MLIC's LTC Rate Filings in Missouri and Illinois.

This case is pled to involve a series of LTC policies sold by MLIC beginning in 2005 referred to as the LTC2 or VIP2 policies ("VIP2"). Plaintiffs purchased their policies in Missouri and Illinois. (Compl. ¶ 20).  MLIC filed its policy forms, riders, actuarial memoranda and rates for the VIP2 in Missouri on November 9, 2004.  (SERFF Initial Filing for Missouri attached as Ex. A to the Declaration of Thomas Reilly (ECF No. 21) ("Reilly Decl."), at ¶ 9).[2]  Missouri accepted the VIP2 filing on July 25, 2005.  (SERFF approval notification for Missouri attached as Ex. B to Reilly Decl., at ¶ 10).   MLIC filed its policy forms, riders, actuarial memoranda and rates for the VIP2 with the Illinois Department of Insurance on October 28, 2004. (SERFF initial filing for Illinois attached as Ex. C to Reilly Decl., at ¶ 11).  Illinois approved the filing on April 6, 2005. (SERFF approval notification for Illinois attached as Ex. D to Reilly Decl., at ¶ 12).[3]

As part of these filings, MLIC was required to justify its proposed premium rates and to provide an actuarial memorandum including accompanying data supporting the assumptions that went into those rates.  MO. CODE REGS. ANN. tit. 20, § 400-4.100(8); ILL. ADM. CODE tit. 50 §

---

[2] The Court may consider MLIC's SERFF filings at this stage because "district courts may take judicial notice of public records and may thus consider them on a motion to dismiss…[m]atters of public record may include records and reports of administrative bodies."  *Blankenship v. Medtronic, Inc.*, 6 F. Supp. 3d 979, 984, n.1 (E.D. Mo. 2014).

[3] In deciding whether to dismiss a complaint under Rule 12(b)(6), the Court may consider not only documents attached to the Complaint, but "matters that are part of the public record… as well as materials that are 'necessarily embraced by the pleadings.'"  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citing *Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir.)); *Rousin* 664 F. Supp. 2d at 415-16 (taking judicial notice of insurance rate filing documents filed with the New York Department of Insurance).

2012.64(b).   Among the information provided to regulators was MLIC's justification for its expectation that "the initial premium rate schedule is sufficient to cover anticipated costs under moderately adverse experience and the premium rate schedule is reasonably expected to be sustainable over the life of the form with no future premium rate increases anticipated."  (Exs. A & C to Reilly Decl., Actuarial Memorandum at p. 23).   The actuarial memorandum submitted in connection with the initial filings specifically informed state regulators that the average annual premiums for the policies "are based on a 4-year plan, 100 days elimination period, 100% home care or basic benefits, if applicable, *and with 5% compound inflation protection rider*."  (Exs. A & C to Reilly Decl., Actuarial Memorandum at p.18) (emphasis added).   In all, the initial filings for each state consisted of over 500 pages of information.   The ultimate acceptance of these filings reflects that regulators considered review of the substance of the filings including specific questions posed to and responded by MLIC. (SERFF initial filings for Missouri and Illinois attached as Exs. A & C to Reilly Decl., at ¶¶ 9, 11).

### D.   Plaintiffs Received Numerous Disclosures That Their Rates Could Increase on a Class-wide Basis.

Plaintiffs, Dennis and Susan Collins and David Butler purchased VIP2 policies issued in Missouri and regulated by the Missouri Department of Insurance.  (Compl. ¶¶ 10-12).  Plaintiff Lucia Bott purchased an VIP2 policy issued in Illinois and regulated by the Illinois Department of Insurance. (Compl. ¶ 13).  All of the Plaintiffs (as part of their law firm's group plan) purchased their policies on or about February 1, 2007.  (Compl. ¶ 20).

Plaintiffs' policies prominently state that the policies were "guaranteed renewable" (meaning that the policies could not be discontinued by MLIC so long as premiums were timely paid), and that MLIC "may change the premium rate."  Ex. A to Compl. at p. 10, Policy of Dennis Collins ("D. Collins Policy"). They further stated that "[a]ny such change in premium rates will

apply to all policies in the same class" as Plaintiffs  "in the state where [their] policy was issued."
*Id*.  Under the section of the policy titled "Premium Payment" MLIC further disclosed that: "We
reserve the right to change premium rates on a class basis."  *Id.* at p. 34.  The policy states also
that: "This policy, with any Riders, endorsements and written application attached make up the
contract.  The provisions of this policy must be read as a whole."  *Id*. at p. 39.

Plaintiffs all purchased the Inflation Rider which is part of the policy and provided
Plaintiffs with a five percent (5%) increase in benefits each year "with no corresponding increase
in premium."  Compl. ¶ 22; Ex. B to Compl at p. 45, Policy Inflation Rider dated February 1, 2007.
The Rider also states that "Your premium is not expected to increase as a result of the benefit
amount increases provided by this Rider.  However we reserve the right to adjust premiums on a
class basis."  (Compl. ¶ 23).  The Rider also includes an express provision allowing policyholders
to terminate the rider at any time upon written request.

**E.    MLIC Raises Premiums on a Class-wide Basis.**

Plaintiffs' premium rates remained constant from 2007 through 2015.  (Compl. ¶¶ 25-26,
31).  In 2015, MLIC raised VIP2 premiums on a class-wide basis consistent with the terms of the
policies.  (Compl. ¶ 26). The rate increase applied class-wide, to all VIP2 policies whether the
policies included the Inflation Rider or not.  (Compl. ¶¶ 26-27, 31).

Missouri and Illinois regulations required MLIC to first submit any rate increases for
regulator review and to provide actuarial justification in support of the rate increase. MO. CODE
REGS. ANN. tit. 20, § 400-4.100(18); ILL. ADM. CODE tit. 50 § 2012.112(b).  MLIC submitted an
actuarial memorandum to the regulators justifying the need for the rate increase on their policies.
(SERFF initial filings for Missouri and Illinois attached as Exs. A & C to Reilly Decl., at ¶¶ 9, 11).
The actuarial memorandum noted that "[t]he initial premium schedule was based on pricing

assumptions believed to be appropriate, given the information available, at the time the initial rate schedule was developed."   The memorandum also explained that as part of its in-force management of LTC MLIC monitors its performance by completing periodic analyses of lapse rates, mortality rates, claim incidence rates, claim continuance rates and claim utilization rates and stated that "[f]or these policies, the past experience and future projections based on current experience assumptions combine to a resulting loss ratio that far exceeds both original pricing expectations and state minimum requirement."

In 2013, 2016, and 2019, MLIC filed for a further rate increase for policyholders in Missouri who purchased their policies on or before April 2, 2009.  (Compl. ¶¶ 26, 33).  MLIC similarly filed for rate increases for policyholders in Illinois in 2012 and 2019.  (Compl. ¶¶ 26, 33). As shown through the SERFF rate increase filing packages, the acceptance of these rate increases is not instantaneous, but the culmination of a detailed analysis of supporting documentation and actuarial memoranda, as well as substantive communications between the insurer and the regulatory officials.  (SERFF rate increase filings for Missouri and Illinois attached as Exs. E-I to Reilly Decl., at ¶¶ 13-17).

## ARGUMENT AND AUTHORITIES

## I.    Legal Standard.

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss a cause of action for "failure to state a claim upon which relief may be granted."  As the U.S. Supreme Court has made clear "only a complaint that states a plausible claim for relief survives a motion to dismiss," and determining the plausibility of a complaint "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  To survive a motion to dismiss a

claim must contain enough factual matter accepted as true to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In addition, dismissal under Rule 12(b)(6) "is also appropriate when the plaintiff has included allegations in his complaint disclosing some absolute defense or bar to recovery." *Korte v. Allstate Ins. Co.*, 48 F. Supp. 2d 647, 650 (E.D. Tex. 1999) (dismissing claims based on filed-rate doctrine); *see also e.g., Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995) (dismissal under 12(b)(6) is appropriate where "a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief"); *Oliver v. Resol. Tr. Corp.*, 747 F. Supp. 1351, 1353 (E.D. Mo. 1990), *aff'd*, 955 F.2d 583 (8th Cir. 1992) (dismissal under 12(b)(6) is appropriate when plaintiffs' allegations cannot withstand defendants' affirmative defenses as "the complaint is said to have a built in defense and is essentially self-defeating[.]") (quoting 5A Wright & Miller, Fed. Practice & Procedure §1357 (2d Ed. 1990)).  For example, in *Roussin v. AARP, Inc*. 664 F. Supp. 2d 412 (S.D.N.Y. 2009), where the plaintiff alleged damages resulting from purportedly unreasonable rate insurance premiums, the court granted a Rule 12(b)(6) motion to dismiss the entire class action complaint pursuant to the filed-rate doctrine. *Id*. at 419-420.[4]

## II.     The Filed-Rate Doctrine Mandates Dismissal of Plaintiffs' Claims.

It is well settled under United States Supreme Court and Eighth Circuit precedent that the filed-rate doctrine precludes lawsuits against regulated entities, such as MLIC, that challenge in any way – directly or indirectly – the propriety of a rate that was filed with the regulator.  *See, e.g., American Tel. and Tel.,* 524 U.S. at 227; *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 584 (1981); *Northwestern Bell Tel.,* 954 F.2d at 488.  Indeed, a ratepayer cannot be injured by virtue

---

[4] The *Rousin* court dismissed the complaint with prejudice, finding that leave to replead would be futile since the plaintiff "cannot plead damages resulting from insurance premiums that, pursuant to the filed-rate doctrine, are barred from review by this Court." *Id.* at 419-20.

of paying a filed-rate, and accordingly, lacks standing to sue.  *See, e.g., Saunders v. Farmers Ins. Exchange*, 440 F.3d 940, 943 (8th Cir. 2006) ("[T]he regulatory agency's approval establish[es] the lawfulness of the filed rates," and accordingly, the ratepayer cannot claim any economic harm or damage from having paid, or as a result of, the filed-rate); *Taffet v. Southern Co.,* 967 F.2d 1483, 1493 (11th Cir. 1992).

### A.   The Filed-Rate Doctrine Applies to MLIC's Filed Insurance Rates in Missouri and Illinois.[5]

State and federal courts throughout the United States have dismissed lawsuits claiming damages allegedly stemming from improper rates charged, where those rates are the subject of state (or federal) regulation.  Courts reached this conclusion regardless of whether the lawsuits sounded in contract or tort.  As the United States Supreme Court has recognized, under the filed-rate doctrine, a plaintiff "can no more obtain unlawful preference under the cloak of a tort claim than it can by contract."  *American Tel. and Tel.*, 524 U.S. at 227 (Supreme Court in reversing the Ninth Circuit determined that the filed-rate doctrine applied with equal force to tort claims that were wholly derivative of the contract claims).  Nearly every court that has considered the issue has held the filed-rate doctrine applies to insurance.  Numerous courts agree that "most states have adopted the filed-rate doctrine," and applied it to the insurance industry *Schermer v. State Farm*

---

[5] MLIC has applied both Missouri and Illinois law based on applicable choice of law principles. Plaintiffs have chosen to file a diversity action in the Eastern District of Missouri, thus, Missouri choice of law rules apply.  *See Nationwide Mut. Ins. Co. v. Harris Medical Associates*, LLC, 973 F.Supp.2d 1045, 1051 (E.D. Mo. 2013) ("In diversity cases, the choice of law rules of the forum state determine which state's substantive law applies.") (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941).  As such, Plaintiffs' claims are governed by the law of the state with "most significant relationship" to the LTC insurance contracts.  *Nationwide*, 973 F.Supp.2d at 1053 (citing *Sturgeon v. Allied Professionals Ins. Co.*, 344 S.W.3d 205, 211 (Mo. Ct. App. 2011); *Buck v. American States Line Ins. Co.*, 723 F. Supp. 155, 158 (E.D. Mo. 1989).  Plaintiffs purchased their policies in Illinois and Missouri (Compl. Exhibits A-D), and Plaintiffs all reside in Missouri (*Id.* at  ¶¶ 10-13). Therefore, Illinois and Missouri law govern Plaintiffs' claims.

*Fire & Cas. Co.,* 721 N.W.2d 307, 313 (Minn. 2006) (collecting cases applying filed-rate doctrine

to insurance rates); *Schilke v. Wachovia Mortg., FSB*, 820 F. Supp. 2d 825, 835-36 (N.D. Ill.

2011), *aff'd on other grounds sub nom*, *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601 (7th Cir. 2013)

(collecting cases applying filed-rate doctrine in the insurance industry).

Illinois state and federal courts have expressly applied the filed-rate doctrine to dismiss

cases challenging insurance rates and forms.  *See Anzinger v. Illinois State Medical Inter-*

*Insurance Exchange*, 144 Ill. App. 3d 719, 721, (Ill. App. Ct. 1986) (filed-rate doctrine barred suit

to recover premiums paid to insurance carrier); *Horowitz v. Bankers Life & Cas. Co,* Ill. App. 3d

390, 408 (Ill. App. Ct. 2001) (filed-rate doctrine barred insured's breach of contract and statutory

claims); *Schilke,* 820 F. Supp. 2d at 836.[6]  So has the Western District of Missouri applying

Missouri law and the filed-rate doctrine to insurance rates.  *Saunders v Farmers Ins. Exch.*, No.

97-1104-CV-W-FJG, 2005 WL 8169104 (W.D. Mo. March 31, 2005) (holding filed-rate doctrine

applies to insurance claims as a matter of law), *rev'd on other grounds* 440 F.3d 940, 944-45.

## B.    Both Key Underpinnings of the Filed-Rate Doctrine Require Dismissal of this Action.

Two key principles underlie the filed-rate doctrine.  First, "the non-justiciability" principle

reflects courts' limited ability to determine the reasonableness of rates set by a regulatory agency

and their reluctance to substitute their judgment for agency expertise. *See, e.g., AT&T Corp. v.*

*JML Telecom, LLC*, 470 F.3d 525, 535 (3d Cir. 2006).  That is courts should not "systematically

---

[6] In fact, other federal courts in the Seventh Circuit have even recently applied the filed-rate doctrine where plaintiffs challenged a long-term care insurer's class-wide premium rate increases. *French v. Nw. Mut. Life Ins. Co.*, No. 20-CV-1090-BHL, 2021 WL 5162646, at *3 (E.D. Wis. Nov. 5, 2021).  And while the state courts of Missouri have not specifically ruled on whether the filed-rate doctrine applies to insurance, this Court has the authority to apply the doctrine.  *David v. Tanksley,* 218 F.3d 928, 930 (8th Cir. 2000) ("When that court has not clearly spoken on an issue, we may consider 'relevant state precedent, analogous decisions, considered dicta, ... and any other reliable data.'") (quoting *Bass v. General Motors Corp.*, 150 F.3d 842, 847 (8th Cir. 1998).

second guess" the "hundreds…of discretionary decisions" made when analyzing rates. *Wegoland*, 27 F.3d at 21. As compared with the expertise of regulating agencies, courts do not approach the same level of institutional competence to ascertain reasonable rates…Courts are simply ill suited to systematically second guess the regulators' decision and overlay their own resolution." *Id*. Second is the "nondiscrimination" principle, which recognizes it would be discriminatory to award damages to a regulated entity's litigious customers, leaving others to pay the higher filed rate. *Goldwasser v. Ameritech Corp.*, 222 F.3d 390, 402 (7th Cir. 2000). Damage awards arrived at by attacking a regulated rate result in a price discount that spawns price discrimination, eventually rendering the government-regulated rate meaningless. *Katz v. MCI Telecommunications Corp.*, 14 F. Supp. 2d 271, 274 (E.D.N.Y. 1998). Thus, the purposes of the filed-rate doctrine are to: (1) preserve the regulating agency's authority to determine the reasonableness of rates; and (2) ensure that the regulated entities charge only those rates that the agency has approved or been made aware of as the law may require. *Northwestern Bell Tel.*, 954 F.2d at 488; *see also Hall*, 453 U.S. at 577 (1981) ("No court may substitute its own judgment on reasonableness for the judgment of the Commission. The authority to decide whether the rates are reasonable is vested by [law] solely in the Commission. . . [And] [e]xcept when the Commission permits a waiver, no regulated seller of natural gas may collect a rate other than the one filed with the Commission.").

### 1. The Filed-Rate Doctrine's Nonjusticiability Principle Prevents Second -Guessing of State Insurance Departments' Ratemaking Decisions.

Pursuant to the "non-justiciability" principle of the doctrine, it is the province of the regulators, with their special expertise to determine the reasonableness of rates. *Northwestern Bell Tel.,* 954 F.2d at 488-92 (The purpose of the filed-rate doctrine is to "preserve the regulating agency's authority to determine the reasonableness of rates"). But Plaintiffs are asking this Court,

and ultimately potentially a jury, to retroactively substitute their judgment on the VIP2 inflation rider rates.

Plaintiffs' primary contention is that the Rider was initially priced in such a way that the increased benefits resulting from the Inflation Rider would create projected future losses that would be used to justify future rate increases. (Compl. at ¶ 37).  Even if rate increases could somehow be attributable to the increased benefits provided by the Inflation Rider (they cannot), under the filed-rate doctrine it is presumed that the regulators had sufficient expertise to have reviewed and analyzed the actuarial effect of those known automatic annual benefit increases in conjunction with the proposed premiums to determine if the product was reasonably priced. Plaintiffs essentially allege that regulators were *wrong* in assessing whether the premiums charged for the Inflation Rider would be sufficient in conjunction with the performance of the entire policy block.

When it filed its initial rates, MLIC provided each regulator – as required by regulations – with its justification for why it "expected" the rates to be "sufficient to cover anticipated costs under moderately adverse experience" and why "the premium rate schedule is reasonably expected to be sustainable over the life of the form with no future premium increases anticipated."  Mo. Code Regs. Ann. tit. 20, § 400-4.100 (8)(B)(2)(A-E); Ill. Adm. Code tit. 50 § 2012.64(b)(2)(A-F).  Plaintiffs' allegations that MLIC was wrong or even that it misled the regulators is insufficient to circumvent the filed-rate doctrine.  The regulators already made the determination, and private plaintiffs are prohibited from second-guessing the decision.

Moreover, there can be no economic injury to a consumer for having paid the filed rates, and hence, no standing to sue in this Court.  *Saunders v. Farmers Ins. Exch.*, 440 F.3d 940, 943 (8th Cir, 2006) (Limiting plaintiffs' alleged damages only to damages claims brought under federal

civil rights statutes, and noting that otherwise, "a ratepayer suffers no injury from being charged the filed rate."); *Morales v. Attorneys' Title Ins. Fund, Inc.*, 983 F. Supp. 1418, 1429 (S.D. Fla. 1997) ("[B]ecause [plaintiffs] have no legal right to pay anything other than the promulgated rates, they have suffered no cognizable injury by virtue of paying said rates.") (*citing Taffet*, 967 F.2d at 1494 (Holding the same)).

### 2.  Plaintiffs' Claims Also Violate the Doctrine's Nondiscrimination Principle.

Pursuant to the so-called nondiscrimination principle underlying the filed-rate doctrine, permitting courts or juries to engage in retroactive ratemaking "would lead to discrimination in rates in that a victorious plaintiff would end up paying less than similarly situated non-suing customers." *Wegoland*, 27 F.3d at 19 (citing *Keough v. Chicago & N.W. Ry Co.*, 260 U.S. 156, 164 (1922)); *In re New Jersey Title Ins. Litig.*, No. CIV.A. 08-1425,  2009 WL 3233529, at *2 D.N.J. Oct. 5, 2009), *aff'd*, 683 F.3d 451 (3d Cir. 2012) ("The doctrine also reflects the judiciary's inability, by virtue of the case-based adjudication process, to remedy a consumer's established injury without discriminating against similarly situated, non-suing customers that continue to pay the original unlawful rates.").  That a case is pleaded as a class action does not assuage this concern. This is particularly so in damages class actions such as this one, since putative class members have a right to exclude themselves from the class.  *See*  Fed R. Civ. P. 23(c)(2); *See, e.g. Wegoland,* 27 F.3d at 21-22 (the filed-rate doctrine applies "whether or not plaintiffs are suing for a class"); *In re New Jersey Title Ins. Litig.,* 2009 WL at *3;  *Marcus v. AT&T Corp.,* 938 F. Supp 1158, 1171 (S.D.N.Y. 1996), *aff'd sub nom. Marcus v. AT&T Corp.*, 138 F.3d 46 (2d Cir. 1998);  *Morales v. Attorneys' Title Ins. Fund, Inc.,* 983 F. Supp. 1418, 1428 (S.D. Fla. 1997).

Recently, the Northern District of Illinois applied the filed-rate doctrine to dismiss a virtually identical claim based on the filed-rate doctrine holding that a claim that insureds who

opted into "the Lifetime Compound Automatic Benefit Increase" – essentially another insurer's equivalent product to MLIC's Inflation Rider - were subject to premium rate increases.  *Gunn*, 2019 WL 10271173, at *1, *rev'd and remanded on other grounds*, 968 F.3d 802 (7th Cir. 2020).  In dismissing the claim, the Court noted the plaintiff's proposed remedies would result in him and any proposed class member paying a different rate than other similarly situated customers.[7]

The relief sought in Plaintiffs' Complaint is disgorgement of all amounts Plaintiffs paid for the Inflation Rider. (Compl. at ¶¶ 81, 91, 107). Plaintiffs, however, paid the same rate – and the same increases – as all other policyholders who purchased equivalent coverage under the VIP2 policy forms.  Thus, if the Plaintiffs prevailed in their respective states, they would have received the same coverage (over the past 14-15 years) but at a far lower cost than those policyholders who purchased the Inflation Rider but did not sue. Similarly, they would have received *far greater* coverage than those policyholders who did not purchase the Rider even though, under Plaintiffs' theory, they would end up having paid the same premium as policyholders who did not purchase the Inflation Rider and thus who received coverage providing much lower benefits.

### C.      Plaintiffs' Claims Relate to Filed Rates and Regulator Review.

There can be no dispute that Plaintiffs' claims are based on rates filed with Missouri and Illinois regulators.  Indeed, those regulators accepted the Inflation Rider based on MLIC's filings that were required to include not only the policy form and language regarding rates but also to provide "an offer of inflation protection that provides for automatic benefit increases [that] shall include an offer of a **premium which the insurer expects to remain constant**." MO. CODE REGS.

---

[7] In reversing the District Court decision, the Seventh Circuit ruled that the Court must determine what state law applies to plaintiffs' claims noting differences between the laws of Washington state which has not fully adopted the filed-rate doctrine and the law of District of Columbia. *Gunn* 968 F.3d at 813.  Here the applicable law is Illinois and Missouri both of which apply the filed-rate doctrine.

ANN. tit. 20, § 400-4.100(11)(F); ILL. ADM. CODE tit. 50 § 2012.80(f) (emphasis added).  The alleged "misrepresentation" that is the focus of Plaintiffs' Complaint directly tracks the language of the regulations and directly relates to the rate that was accepted based on the actuarial data submitted to the regulators.  For example, Plaintiffs complain that the filed Inflation Rider allegedly misleadingly stated: "**Your premium is not expected to increase** as a result of the benefit amounts increases provided by this Rider."  (Compl. at ¶23 (emphasis added)).

Plaintiffs also claim that MLIC purposefully priced the Inflation Rider so that it would be able to pursue rate increases in the future.  (Compl. at ¶¶ 41-42).  That theory of liability flies in the face of the fundamental principle of the filed-rate doctrine that "a filed rate or one approved by the governing regulatory agency, is per se reasonable and is unassailable in judicial proceedings by a ratepayer." *Wegoland,* 27 F.3d at 18. If Plaintiffs' Complaint were successful, it would effectively nullify the regulators' determination regarding the pricing for the *mandatory* Inflation Rider.  Such an outcome would directly contravene the filed-rate doctrine.  *See, e.g., Coll v. First Am. Title Ins. Co*, 642 F.3d 876, 889-90 (10th Cir. 2011) (if a plaintiff succeeding on its damage would impact the agency's rate determination, the doctrine applies).

### D.    Plaintiffs Cannot Escape the Filed-Rate Doctrine by Pleading Fraud (Counts I & II).

Plaintiffs cannot escape application of the filed-rate doctrine to preclude this action by disguising their attacks on MLIC's rate increases as allegations of fraudulent conduct.  MLIC anticipates that Plaintiffs will argue that the filed-rate doctrine does not preclude this action because they supposedly are not directly attacking MLIC's rate increases but rather are alleging fraudulent omissions and misrepresentations regarding such rate increases and fraudulent conduct in setting its premium rates.  It is well established, however, that there is no fraud exception to the filed-rate doctrine.  *See e.g. Northwestern Bell Tele.*, 954 F.2d at 492 (rejecting argument that

filed-rate doctrine does not apply in the face of allegations of fraudulent conduct); *French v. Nw. Mut. Life Ins. Co.*, No. 20-CV-1090-BHL, 2021 WL 5162646, at *3 (E.D. Wis. Nov. 5, 2021); *Coll v. First American Title Ins. Co*., 642 F.3d 876, 886-67 (10th Cir. 2011) (applying the filed-rate doctrine in case where insurer allegedly bribed the insurance commission to set rates); *Hill v. Bell South Telecomms., Inc.* 364 F.3d 1308, 1315 (11th Cir. 2004) (claims that defendant misrepresented the rates were barred).  This is so because awarding a refund would, in essence, amount to a finding that the regulator approved rate was unreasonable.  *Id.* at 1317. Plaintiffs' claim necessarily assumes that MLIC duped the regulators into accepting a rate MLIC actually did not expect to remain constant and in fact knew would have to be increased.  Regardless of the merits (or clear lack thereof) of Plaintiffs' allegations the claim falls squarely within the filed-rate doctrine.  Numerous courts throughout the country, including the Eighth Circuit and the United States Supreme Court have made clear that "there is no fraud exception to the filed-rate doctrine." In *Northwestern Bell Telephone*, the Eighth Circuit rejected plaintiffs' argument that the filed-rate doctrine "does not apply in the face of fraudulent conduct," and affirmed the dismissal of their RICO action against a phone company for illegally influencing rate regulators holding: "**the underlying conduct does not control whether the filed-rate doctrine applies."** 954 F.2d at 489, 492 (emphasis added).  The focus for determining whether the filed-rate doctrine applies is the impact the court's decision will have on agency procedures and rate determinations.  Here, Plaintiffs are requesting that the Court essentially negate a required feature of all LTC policies in Missouri and Illinois and retroactively lower Plaintiffs' premiums for insurance they have already received below the rates filed with the state.

        While Plaintiffs may have artfully pled their allegations regarding the rate increases under the guise of fraudulent conduct, those allegations cannot circumvent nor escape the application of

the filed-rate doctrine.[8]  Accordingly, this Court should still dismiss Plaintiffs' common law fraud

(Count I) and fraudulent concealment (Count II) claims based on the application of the filed-rate

doctrine.

### III.     The Missouri Plaintiff Claims Also Are Preempted Because the Department of Insurance Has Primary Jurisdiction Over Its Claims.

Even if Plaintiffs' claims were not completely barred by the filed-rate doctrine, they

alternatively must be dismissed because the Missouri Plaintiffs did not exhaust the required

administrative process for challenging insurance rates or rules.  Missouri law sets forth a

mandatory administrative process to pursue claims such as those asserted by Plaintiffs here.

Specifically, if an insured believes he or she has been aggrieved by *any rate charged*, rating plan,

rating system, or underwriting rule followed or adopted by an insurer," the insured must first send

a written request to the insurer "to review the manner in which the rate, plan, system, or rule has

been applied with respect to insurance afforded him."  Mo. Rev. Stat. § 379.348.  Then, *if* such a

request is denied by the insurer (or not granted in 30 days), the insured may file a written complaint

and request for hearing with the [Missouri Director of Insurance]." *Id.*  The Eight Circuit recently

affirmed that the administrative process set out in Missouri law is not optional but, rather, is

---

[8] In fraud cases where courts have refused to apply the filed-rate doctrine they have done so because the alleged misrepresentations or omissions did not relate to the setting or approval of a paid rate. Thus, in *Skochin v. Genworth* 413 F. Supp. 3d 473 (E.D. Va, 2019) which Plaintiffs are expected to argue support their efforts to plead around the restrictions of the filed-rate doctrine actually highlights the problem with Plaintiffs' claim.  In that case, plaintiffs brought fraudulent inducement claims – *not* about an initial rate filing accepted by regulators – but rather based on the defendants' allegedly undisclosed communications with regulators about their ongoing attempts to obtain rate increases years *after* the policies were initially priced.  In that case, plaintiffs' alleged that Genworth had internally determined rate increases were necessary for the survival of the relevant block and allegedly the company itself.  The *Skochin* court in denying the motion to dismiss held the alleged misrepresentation was not associated with a rate that a regulator had approved; rather the defendant was accused of withholding from policyholders information about rate increases.  *Id.* at 478. Unlike in *Skochin*, here, the Plaintiffs are attacking the representations MLIC made to regulators and which the regulators evaluated and acted on.

mandatory and, therefore, a complaint filed in court that seeks to bypass such administrative review must be dismissed. *Alyssa's Flowers, Inc. v. State Farm Fire & Casualty Co.,* 24 F.4th 1212, 1215-16 (8th Cir. 2022) (affirming dismissal of plaintiff's claim because it was required to pursue a claim relating to insurer's rates, rating plan, rating system or underwriting rules with the Director of Insurance).

Plaintiffs here claim they have been harmed by MLIC's raising of their premium rates through a scheme to use "worthless" added future benefits to justify rate increases.  (Compl. ¶¶ 116-17).  At the heart of their Complaint is the claim that Plaintiffs have been harmed by MLIC's rates and the rules used to justify those rates. (Compl. ¶¶ 26, 58, 73, 81, 91, 107, 117).   But Plaintiffs have not alleged that they have pursued any of the administrative processes required to assert such a complaint.   Accordingly, their claims must be dismissed for failure to exhaust those administrative remedies. *Alyssa's Flowers, Inc* 24 F.3d at 1215-16.

## IV.     The Implied Covenant of Good Faith and Fair Dealing (Count IV) Must Be Dismissed Because It Does Not Allege Breach of A Specific Provision.

Under both Missouri and Illinois law, in order to prevail on an implied duty of good-faith and fair dealing claim, a plaintiff must (1) plead a cause of action for breach of contract - not a separate cause of action for breach of duty of good faith, and (2) point to a term of the contract which the defendant allegedly violated by failing to abide by the good-faith spirit a specific term. *See, e.g., Meridian Creative Alliance, LLC v. O'Reilly Automotive Stores, Inc.,* 519 S.W.3d 839, 845 (Mo. Ct. App. 2017) ("The implied duty of good faith is not a separate claim beyond or divorced from the contract. The covenant cannot give rise to new obligations not otherwise contained in the contract's express terms.").  Since the purpose of this implied duty is to effectuate the parties' express promises, a purported breach of the implied duty is actionable only when it relates to some aspect of performance under the terms of the contract. *Arbors at Sugar Creek*

*Homeowners Assoc. v. Jefferson Bank & Trust Co., Inc.*, 464 S.W.3d 177, 185 (Mo. banc 2015) (A breach of this implied covenant does not occur "where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract."); *JPMorgan Chase Bank, N.A. v. E.-W. Logistics, L.L.C.*, 9 N.E.3d 104, 118 (Ill. Ct. App. 2014) (In finding that party did not breach the implied covenant of good faith and fair dealing the court reasoned that "parties to a contract are entitled to enforce its terms to the letter, and an implied covenant of good faith cannot overrule or modify the express terms of a contract).

It is well-settled that the implied covenant is derivative in nature in that it does not create or supply new contract terms. Thus, where a contract does not impose an obligation on a defendant, "the covenant cannot give rise to a new obligation not otherwise contained in a contract's express terms." *Park Ridge Associates v. U.M.B. Bank,* 613 S.W.3d 456, 465 (Mo. Ct. App. 2020) (Court found no violation of the implied duty of good faith and fair dealing as plaintiff had failed to allege any violations of the express terms of the contract).  Here, although Plaintiffs allege that MLIC violated the implied duty by allegedly failing to disclose that there was supposedly "a relationship between the increased daily benefit amount and future rate increases," no such disclosure obligation exists in the policies nor have Plaintiffs alleged the breach of any specific contract provision giving rise to an implied duty in the first instance.  Accordingly, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing must be dismissed for this reason as well.

## CONCLUSION

For the forgoing reasons, MLIC respectfully requests this Court enter an order dismissing Plaintiffs' Complaint against MLIC with prejudice.

Dated: May 24, 2022

Respectfully submitted,

**/s/ Stephen J. O'Brien**
Michael J. Duvall #58932MO
**DENTONS US LLP**
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704
Telephone: (213) 892-2818
Fax:  (213) 623-9924
*michael.duvall@dentons.com*

Stephen J. O'Brien #43977MO
**DENTONS US LLP**
One Metropolitan Square, Suite 3000
St. Louis, MO 63102
Telephone: (314) 259-5904
Fax: (314) 259-5959
*stephen.obrien@dentons.com*

Drew W. Marrocco (admitted *pro hac vice*)
**DENTONS US LLP**
1900 K Street, NW
Washington, DC 20006
Telephone: (202) 408-6387
Fax: (202) 496-7756
*drew.marrocco@dentons.com*

Sandra D. Hauser (admitted *pro hac vice*)
**DENTONS US LLP**
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 768-6700
Fax: (212) 768-6800
*sandra.hauser@dentons.com*

*Counsel for Defendant Metropolitan Life
Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this the 24th day of May 2022, a true and accurate copy of the foregoing was filed electronically to be served on all counsel of record via operation of the Court's electronic filing system.

<u>   */s/ Stephen J. O'Brien*                        </u>