**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| DENNIS COLLINS, *on behalf of himself and all others similarly situated,* et al., <br><br> Plaintiffs, <br><br> v. <br><br> METROPOLITAN LIFE INSURANCE COMPANY, <br><br> Defendant. | No. 4:22-CV-129 RLW |

<u>**MEMORANDUM AND ORDER**</u>

Plaintiffs Dennis Collins, Suzanne Collins, David Butler, and Lucia Bott bring this suit against Metropolitan Life Insurance Company ("MetLife" or "Defendant") for the recovery of the premiums they paid for inflation protection under their long-term care ("LTC") insurance policies. Plaintiffs allege that MetLife made fraudulent misrepresentations and concealed material facts about the effects of the inflation rider on their premiums.  Plaintiffs bring suit on behalf of themselves and those similarly situated.   This matter is before the Court on MetLife's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 20).   Plaintiffs oppose the motion, which is fully briefed and ripe for review. For the reasons that follow, the Court grants MetLife's motion to dismiss for failure to state a claim.

### I. Background

In their Complaint, Plaintiffs allege that on or around February 2007, they purchased MetLife LTC policies all of which were issued under the same plan number.[1]   Plaintiffs attached

---

[1]The Court has diversity subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(d)(2)(A). Plaintiffs are citizens of Missouri. Defendant is a New York corporation with its principal place of business in New York.   The proposed class exceeds 100 persons, and the amount

copies of the policies to their Complaint.   (ECF No. 1, Exs. A-B at 1).   In conjunction with their MetLife LTC policies, Plaintiffs also purchased the "5% Automatic Compound Inflation Protection Rider" (hereinafter the "Inflation Rider").   In the policies, MetLife described the Inflation Rider as follows:

> Automatic Compound Inflation Benefit. Your benefit will automatically increase each year with no corresponding increase in premium. The amounts of the increases are equal to five percent (5%) of the benefit amounts in effect at the end of the prior Policy Year.... The benefit amount increases will occur on each Policy Anniversary for the lifetime of Your policy, even when you are receiving Benefits. These increases will be made without regard to Your age, claim status, claim history, health, or the length of time You have been covered under the policy. Your premium is not expected to increase as a result of the benefit amounts increases provided by this Rider. However, We reserve the right to adjust premiums on a class basis.

(ECF No. 1 at 5).

According to the Complaint, Plaintiffs paid substantially more in premiums for the promises made and benefits provided by the Inflation Rider.   In fact, Plaintiffs allege that the Inflation Rider more than doubled the price of their annual base premium.   For example, Plaintiff Dennis Collins alleges that his initial base annual premium was $2,182.61, and the amount for the Inflation Rider was an additional annual charge of $2,334.96.

Beginning in or around February 2015, and then subsequently in February 2018 and February 2019, MetLife notified Plaintiffs of substantial increases in premiums for all policyholders.   At the time it announced the increases, MetLife informed Plaintiffs that when it initially priced the long-term care insurance products that it considered many factors including persistency rates, mortality, rates and morbidity rates, and that after an in-depth analysis, it determined "a premium increase is necessary on certain long-term care insurance policies."   (ECF

---

in controversy is alleged to exceed $5 million.

2

No. 1 at 6).   Plaintiffs maintain that between the time they purchased their policies and when MetLife implemented each of the rate increases, the persistency rates, mortality rates, and morbidity rates did not change.   Plaintiffs allege that the only "appreciable change" between when they purchased their initial policies and when MetLife implemented the class-wide rate increases, "was that the future daily benefit amount for purchasers of the rider, projected over decades, increased to an unrealistic number and provided the sole basis for the implementation of class-wide rate increases."   (ECF No. 1 at 6).   In other words, the Inflation Rider was the justification for the increase in premiums.

According to Plaintiffs, what "MetLife knew when it sold the products and each time it implemented premium increases, but did not tell insureds, was that the projected daily benefit amounts, inflated to unreasonable levels, would be used to establish projected future losses and provided the primary basis and support for the rate increases."   (Id. at 7).   Plaintiffs allege that MetLife knew at the time it sold the policies and the Inflation Riders that it would determine future rate increases based on projected future losses, and that the increase in daily benefits due to purchasers of the Inflation Rider would generate future losses.   Put another way, the increased daily benefits promised to purchasers of the Inflation Rider would in time generate losses for MetLife, and MetLife would use these projected loses "to justify raising premiums" on all purchasers of MetLife's LTC policies, including on those who had purchased the Inflation Rider. (Id. at 8).   Plaintiffs contend MetLife fraudulently concealed its plan from LTC policyholders, and more specifically, to purchasers of the Inflation Rider.

According to the Complaint, MetLife knew its statement in the policies that the Inflation Rider "provided an increase in daily benefit amount without a 'corresponding increase' in premium[s] was and is false" as was the statement that "[y]our premium is not expected to increase

3

as a result of the benefit amount increases provided by this Rider."   (Id. at 89).   Plaintiffs claim MetLife knew at the time it sold the LTC policies and the Inflation Riders that it would increase premiums on a class-wide basis based on the future daily benefit amount increases, including for purchasers of the Inflation Rider.

The Complaint further alleges MetLife intended for purchasers of the Inflation Rider to rely on its statement that "[y]our premium is not expected to increase as a result of the benefit amount increases provided by this Rider."   (Id. at 10).   Plaintiffs assert they reasonably believed that by purchasing the Inflation Rider they were limiting the risk of future rate increase as they were paying more than double in premiums to secure an increasing daily benefit.   In reality though, they were, "merely providing MetLife with the basis on which to demonstrate projected future losses which MetLife deliberately exploited to justify the need for future rate increases."   (Id. at 10).   Plaintiffs maintain that MetLife concealed material information that it was under a duty to disclose; the Inflation Rider has no benefit; and MetLife is charging Plaintiffs double their premiums to give MetLife the basis to charge higher premiums to all purchasers of its LTC policies, including Plaintiffs.   Plaintiffs claim that through its misconduct, MetLife has charged and collected tens or even hundreds of millions of dollars in unwarranted premiums.   (Id.)

Plaintiffs' Complaint asserts four causes of action: common law fraud (Count I), fraudulent concealment (Count II), violation of state consumer unfair and deceptive practices protection acts (Count III), and breach of the implied covenant of good faith and fair dealing (Count IV).

Plaintiffs seek to bring a class action against MetLife.   They ask that they be allowed to represent the following class of insureds:

> All persons in the United States who purchased an individual long-term care insurance policy from MetLife (or a subsidiary or affiliate thereof) and selected the "5% Automatic Compound Inflation Protection Rider" at any time during the period from January 1, 1986 to the present and have been subjected to a class-wide

4

rate increase that increased their base premium and the premium/charge paid for the "5% Automatic Compound Inflation Protection Rider.

(ECF No. 1 at 11-12).

Defendant did not answer the Complaint, but rather filed a motion to dismiss pursuant to Rule12(b)(6) of the Federal Rules of Civil Procedure.   MetLife moves to dismiss based on the following arguments: (1) Plaintiffs' claims should be dismissed because they are barred by the filed-rate doctrine; (2) the Missouri Plaintiffs' claims must be dismissed because the Missouri Plaintiffs did not exhaust the required administrative process for challenging insurance rates or rules; and (3) Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is deficient because the Complaint fails to plead any specific contract provision from which the alleged covenant of good faith and fair dealing arises.

## II.    *Legal Standard*

As an initial matter, Plaintiffs argue in response to Defendant's Motion to Dismiss that the motion is not properly before the Court on a Rule 12(b)(6) motion, but rather should have been brought as a motion for judgment on the pleadings under Rule 12(c) because Defendant is raising affirmative defenses.

Motions for judgment on the pleadings under Rule 12(c) are determined under the same standards that are applied to a motion under Rule 12(b)(6).   Ginsburg v. InBev NV/SA, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010).   To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Blomker v. Jewell, 831 F.3d 1051, 1055 (8th Cir. 2016)

5

(quotation omitted). The facts alleged must "raise a right to relief above the speculative level."
Twombly, 550 U.S. at 555.  A complaint must offer more than "'labels and conclusions' or 'a
formulaic recitation of the elements of a cause of action'" to state a plausible claim for relief.
Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).   The Court accepts as true all of the
factual allegations contained in the complaint, even if it appears that "actual proof of those facts is
improbable," Twombly, 550 U.S. at 556, and reviews the complaint to determine whether its
allegations show that the pleader is entitled to relief.   Id. at 555–56; Fed. R. Civ. P. 8(a)(2). The
principle that a court must accept as true all of the allegations contained in a complaint is
inapplicable to legal conclusions, however.   Iqbal, 556 U.S. at 678 (stating "[t]hreadbare recitals
of the elements of a cause of action, supported by mere conclusory statements, do not suffice").
Although legal conclusions can provide the framework for a complaint, they must be supported by
factual allegations. Id.

For a motion for judgment on the pleadings under Rule 12(c), the well-pleaded factual
allegations of the complaint are assumed to be true, and the complaint and reasonable inferences
arising therefrom are construed most favorably to the plaintiff.   Indep. Fed'n of Flight Attendants
v. Cooper, 141 F.3d 900, 901 (8th Cir. 1998); Westcott, 901 F.2d at 1488.   Legal conclusions
drawn by the pleader from the facts are not, however, blindly accepted.   Westcott, 901 F.2d 1486.
"Judgment on the pleadings should be granted only if the moving party establishes that there are no
material issues of fact and that it is entitled to judgment as a matter of law."   Porous Media Corp.,
186 F.3d at 1079.

In general, affirmative defenses may form the basis of a Rule 12(b)(6) motion to dismiss
where the affirmative defense is apparent on the face of the complaint.   A.H. ex rel. Hubbard v.
Midwest Bus Sales, Inc., 823 F.3d 448, 453 (8th Cir. 2016) ("For an affirmative defense such as

res judicata to provide a basis for dismissal under Rule 12(b)(6), the affirmative defense must be apparent on the face of the complaint, which includes public records and materials embraced by the complaint and materials attached to the complaint.") (cleaned up).   MetLife argues that the defenses it raises are apparent on the face of Plaintiffs' Complaint, and it points out that the United States Supreme Court and Eighth Circuit Court of Appeals have approved of dismissals under Rule 12(b)(6) based on the defenses it raises in its motion.   See Jones v. Bock, 549 U.S. 199, 216 (2007) (failure to exhaust can be a basis for dismissal for failure to state a claim); Square D Co. v. Niagara Frontier Tariff Bureau, Inc., 476 U.S. 409, 414-17 (1986) (affirming dismissal of antitrust claims based on filed-rate doctrine); Firstcom, Inc. v. Qwest Corp., 555 F.3d 669, 680–81 (8th Cir. 2009) (affirming district court's dismissal of claims based on the filed-rate doctrine); H.J. Inc. v. Nw. Bell Tel. Co., 954 F.2d 485, 488–91 (8th Cir. 1992) (affirming district court's ruling on a motion to dismiss based on the filed-rate doctrine).

The Court will proceed to the merits of Defendant's Rule 12(b)(6) motion to dismiss.   The Court finds the defenses are apparent from Plaintiffs' Complaint.   Furthermore, the issues before the Court are fully briefed, and Plaintiffs have not explained how they would be prejudiced by a decision on the merits at this juncture in the proceedings.

### III.   *Choice of law*

In their Response in Opposition to Defendant's Motion to Dismiss, Plaintiffs also raise the issue of choice of law.   All the plaintiffs allege that they were residing in Missouri at the time the Complaint was filed.   (ECF No. 1 at 3-4).   It would also appear that the policies were all signed in St. Louis, Missouri.   (ECF No. 1, Exs. A-D).   And while the four policies at issue in this case are alleged to be substantially the same, all but one were issued by the State of Missouri.   Plaintiff Lucia Bott's policy was issued by the State of Illinois.   (ECF No. 1, Ex. D).   Plaintiffs argue that

the Court should apply Missouri law to all of the plaintiffs' claims because Illinois and Missouri law do not conflict.   But to the extent there are nuances, or the laws do conflict, Plaintiffs argue that the Court should apply Missouri law to Plaintiffs Dennis Collins's, Suzanne Collins's, and David Butler's claims and Illinois law to Lucia Bott's claims.

The Court has jurisdiction over this dispute based on diversity of citizenship.   "A district court sitting in diversity applies the law, including the choice-of-law rules, of the state in which it sits." Prudential Ins. Co. of Am. v. Kamrath, 475 F.3d 920, 924 (8th Cir. 2007) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).   Therefore, Missouri choice of law rules would apply here.   Cicle v. Chase Bank USA, 583 F.3d 549, 553 (8th Cir. 2009); Nationwide Mut. Ins. Co. v. Harris Med. Assocs., LLC, 973 F. Supp. 2d 1045, 1051 (E.D. Mo. 2013).   "Before applying the forum state's choice-of-law rules, however, a trial court must first determine whether a conflict exists." Prudential, 475 F.3d at 924.   A conflict exists if the application of another state's substantive law would change the outcome.   Id. (internal citation omitted). "'Where there is no conflict in the law of two states, the law of the forum state applies." Brenneman v. Great Wolf Lodge of Kansas City, LLC, No. 4:15-CV-00683-SRB, 2017 WL 6383979, at *1 (W.D. Mo. Jan. 24, 2017) (quoting Thomas D. Wilson Consulting, Inc. v. Keely & Sons, Inc., No. 4:05-CV-2115-ERW, 2007 WL 1774434, at *7 (E.D. Mo. June 18, 2007)).

It is uncontested that Missouri law applies to Dennis Collins's, Suzanne Collins's, and David Butler's claims.   And as discussed in detail below, the Court need not decide which state's laws apply to Lucia Bott's claims, because her claims are barred by the filed-rate doctrine under both Missouri and Illinois law.

8

### IV.    Discussion

**A.    Filed-Rate Doctrine**

MetLife moves to dismiss all of Plaintiffs' claims based on the filed-rate doctrine.    It argues that state and federal courts throughout the United States have dismissed lawsuits, sounding in contract and tort, claiming damages based on allegations that companies charged improper rates, where those rates are the subject of state or federal regulations.    Defendant argues the doctrine is used in the context of insurance as well as utilities, and it should be applied to bar Plaintiffs' claims in this case.    Plaintiffs oppose application of the doctrine in the context of insurance and argue it is not relevant to the claims they raise against MetLife.

### 1.    Background

The filed-rate doctrine is a judicially created concept that limits judicial review of rates that have been set or approved by regulatory agencies.    The United States Supreme Court first set forth what has come to be known as the filed-rate doctrine in <u>Keogh v. Chicago Northwestern Railway Co.</u>, 260 U.S. 156 (1922).    In the <u>Keogh</u> case, the plaintiff alleged that common carriers had conspired to fix rates for transporting freight, which violated the Sherman Act.    <u>Id.</u> at 162.    The plaintiff complained he suffered damages because he was forced to pay higher rates than he would have absent the conspiracy, and he requested an award of treble damages under federal antitrust laws.    The Supreme Court held that the plaintiff failed to state a claim and was not entitled to the relief he sought, because the defendant charged a rate that had been filed with and deemed reasonable by the Interstate Commerce Commission.    <u>Id.</u> at 165.    The Supreme Court grounded its holding in two principles.    First, recovery by the plaintiff would necessarily discriminate against other customers who had paid the set rate, thereby defeating the legislative purpose of regulating rates – that the rate should be the same for everyone.    <u>Id.</u> at 163.    Second, Congress had granted

9

the regulatory commission, not the courts, the authority to determine reasonable rates, and the commission had developed expertise in the area.   Id. at 164-65.

Since Keogh, the Supreme Court has advanced the doctrine and applied it to bar not only federal claims, but state law claims in the context of common carriers, telecommunications, and utilities.   See Am. Tel. & Tel. Co. v. Cent. Off. Tel., Inc., 524 U.S. 214 (1998) (state-law claims were barred by the filed-rate doctrine where rates were required to be filed with Federal Communications Commission under the Communications Act of 1934); Square D Co., 476 U.S. 409 (filed-rate doctrine precluded shippers from bringing claim for treble damages based on allegation that the rates carriers filed with the Interstate Commerce Commission were unlawfully fixed); Arkansas–Louisiana Gas Co. v. Hall, 453 U.S. 571 (1981) (filed-rate doctrine prohibited state court action by seller against purchaser of natural gas because the rates had been filed with and set by the Federal Energy Regulatory Commission under the Natural Gas Act); (Montana–Dakota Utilities Co. v. N.W. Pub. Serv. Co., 341 U.S. 246 (1951) (claim of fraud to recover damages for alleged unreasonable electric utility rates did not lie where, under the Federal Power Act, the Federal Power Commission was charged with setting reasonable rates).

In short, the federal filed-rate doctrine "forbids a regulated entity [from charging] rates for its services other than those properly filed with the appropriate federal regulatory authority." Arkansas Louisiana Gas Co., 453 U.S. at 577.   On the flip side, the doctrine prohibits a party from recovering damages measured by comparing the filed rate and the rate that might have been approved absent the alleged misconduct.   Id. at 578–79.

In the case at bar Plaintiffs are bringing state law claims against an insurer that is regulated by the states, not a federal agency.   Application of the filed-rate doctrine to claims arising in state law based on rates filed with state agencies is a matter of state law and is not controlled by federal

precedent.  Knevelbaard Dairies v. Kraft Foods, Inc., 232 F.3d 979, 992 (9th Cir. 2000).  The questions before the Court, therefore, are whether the filed-rate doctrine is recognized under Missouri and Illinois laws, and whether the doctrine should be applied in the insurance context to the claims in Plaintiffs' Complaint.

> 2.    *Missouri law*

Missouri courts have recognized the filed-rate doctrine.  It is settled law in the Missouri that the legal rate is the filed rate, and it is the duty of the regulated company to charge and collect the rate on file with the regulating agency.  Agnew v. Missouri-Am. Water Co., 567 S.W.3d 652, 662 (Mo. Ct. App. 2018) (dismissing consumers' claim for refunds on alleged overpayments for water service because courts lack the authority to determine the rates that should have been charged).  Plaintiffs are prohibited from seeking credit or refund of rates paid when evaluating the case requires a court to determine what a reasonable rate should have been.   Missouri courts have referred to this as retroactive ratemaking, which is prohibited by the filed-rate doctrine.  Id. (citing Lightfoot v. City of Springfield, 236 S.W.2d 348, 353 (Mo. 1951)).   Like the federal doctrine, the filed-rate doctrine in Missouri "prohibits a party from recovering damages measured by comparing the filed rate and the rate that might have been approved absent the conduct in issue."  Id.  See also Brooks v. Empire Dist. Elec. Co., 420 S.W.3d 586, 592 (Mo. Ct. App. 2013) (filed-rate doctrine prohibits courts from determining what rates should have been); Bauer v. Sw. Bell Tel. Co., 958 S.W.2d 568, 570 (Mo. Ct. App. 1997) (filed-rate doctrine "provides that any rate filed with the appropriate regulatory agency is sanctioned by the government and cannot be the subject of legal action.").

Missouri courts have applied the filed-rate doctrine to utilities but, as MetLife admits, Missouri state courts have not extended the doctrine to the insurance industry.   Whether the filed-

rate doctrine acts as an absolute bar to Missouri state law claims involving insurance and premium increases has not been decided under Missouri case law.   This Court, therefore, must determine whether Missouri's Supreme Court would extend the filed-rate doctrine to cases involving insurance.   Anderson v. Nissan Motor Co., 139 F.3d 599, 601–02 (8th Cir. 1998) ("Where neither the legislature nor the highest court in a state has addressed an issue, this court must determine what the highest state court would probably hold were it called upon to decide the issue.").   After reviewing Missouri case law, Missouri's insurance statutes and regulatory scheme, and case law addressing application of the filed-rate doctrine under other states' laws, the Court finds that it would.

Like utilities, insurance carriers are heavily regulated by the State of Missouri, and the State's legislature has granted Missouri's Director of Insurance the authority to establish rules to regulate LTC insurers and policies.   A Missouri statute provides the following:   "The director shall promulgate reasonable rules to promote premium adequacy and to provide alternatives for the policyholder in the event of substantial rate increases, and to establish minimum standards for marketing practices, agent testing, penalties, and reporting practices for long-term care insurance."   Mo. Rev. Stat. § 376.1130(1).   Based upon the statutory grant of authority, the Director of Insurance issued regulations, modeled after the LTC Insurance Model Regulations developed by the National Association of Insurance Commissioners, that provide strict requirements for policy requirements and rate filings.   Mo. Code Regs. Ann. tit. 20, §§ 400-4.100 (1)-(30).

Under Missouri's LTC regulations, insurers are required to file initial rates and rate increase requests with the Missouri Department of Insurance.   Id. § 400-4.100 (8) & (18).   As part of the initial rate filing for policies and riders, insurers are required to provide regulators proposed rates and an actuarial memorandum justifying those rates, including the rates for the

12

inflation riders.  Id. § 400-4.100 (8).  Insurers are further required to provide state regulators a basis for their "expectation" that the proposed premiums were set at a rate that would not require future rate increases.  Insurers must also file for rate increase requests, and there are detailed regulations as to the technical requirements for the calculation of the premium rate increase.  Id. § 400-4.100(18).  If the Director of Insurance determines projections in the filed-rate increase are not adequate, he or she may require additional steps from the insurer, including premium rate adjustments or that "other measures to reduce the difference between the projected and actual experience" be taken.  Id. § 400-4.100(18)(F)(1)(A) & (B).

Under Missouri regulations, LTC insurers must offer to their policyholders the option to purchase inflation protection, one of the options being a rider "increasing benefit levels annually in a manner so that the increases are compounded annually at a rate not less than five percent (5%)."  Id. § 400-4.100(11)(A)(1).  In other words, the Inflation Rider at issue in this case is provided for under Missouri's LTC regulations.  Missouri's regulations further specify the following: "An offer of inflation protection that provides for automatic benefit increases shall include an offer of a premium which the insurer expects to remain constant."  Id. § 400-4.100(11)(F) (emphasis added).  "The offer shall disclose in a conspicuous manner that the premium may change in the future unless the premium is guaranteed to remain constant."  Id. This language, which is required under Missouri's LTC regulations, is the representation Plaintiffs allege was fraudulent in the Inflation Rider.

Missouri's Director of Insurance is also given enforcement powers to correct for violations of insurance laws or unfair rates.  Missouri's legislature empowered the Director to "examine and inquire into all violations of the insurance laws of the state and inquire into and investigate the business of insurance transacted in this state by any insurance agent, broker, agency or insurance

13

company." Mo. Rev. Stat. § 374.190.   If the Director believes that a violation of Missouri's insurance law or regulations has occurred, then he or she may sanction the insurer by requiring it to cease using the improper rate, imposing a penalty and/or suspending its license to do business in the state.   Mo. Rev. Stat. § 379.361.   Under the LTC regulations specifically, the Director is given the discretionary power, upon written request and after an administrative hearing, to "issue an order to modify or suspend a specific provision or provisions of this regulation with respect to a specific [LTC] insurance policy" when certain conditions are met, including that the change would be in the best interest of the insured.   Mo. Code Regs. Ann. tit. 20, § 400-4.100(15).

In light of the foregoing, it is the opinion of the Court that Missouri has a comprehensive insurance regulatory scheme, wherein the state regulatory agency is granted discretionary authority to oversee industry compliance with Missouri's statutory and regulatory LTC policy requirements, including accepting or rejecting rates and rate increases.   This Court believes that Missouri's Supreme Court would extend the filed-rate doctrine to cases involving LTC insurance, as other courts have done in the context of insurance.   See Hong v. Bank of Am., NA, No. 21-35742, 2022 WL 2235469, at *1 (9th Cir. June 22, 2022) (holding filed-rate doctrine barred the plaintiff's claims for damages and injunctive relief under Washington state law based on allegations that defendants engaged in a kickback scheme that inflated homeowner insurance rates); Leo v. Nationstar Mortg. LLC, 964 F.3d 213, 216 (3d Cir. 2020) (holding plaintiff's New Jersey state law claims were barred by the filed-rate doctrine because "an insurance rate is filed with the appropriate regulatory body, we have no ability to effectively reduce it by awarding damages for an alleged overcharge: the filed-rate doctrine prevents courts from deciding whether the rate is unreasonable or fraudulently inflated"); Patel v. Specialized Loan Servicing, LLC, 904 F.3d 1314, 1324 (11th Cir. 2018) (applying filed-rate doctrine to Florida's insurance regulatory scheme to bar

14

state law claims); <u>Rothstein v. Balboa Ins. Co.</u>, 794 F.3d 256, 261 (2d Cir. 2015) (applying filed-rate doctrine to state claims in insurance context); <u>In re New Jersey Title Ins. Litig.</u>, 683 F.3d 451, 453 (3d Cir. 2012) (affirming dismissal of state antitrust claims against New Jersey title insurance companies on the ground that suits were based on rates that had been filed with New Jersey's Department of Banking and Insurance and, thus, were barred by the filed-rate doctrine); <u>Coll v. First Am. Title Ins. Co.</u>, 642 F.3d 876, 887 (10th Cir. 2011) (New Mexico's filed-rate doctrine precluded the plaintiffs' claims against the defendant insurers for damages relief, including claims seeking restitution, recovery for unjust enrichment, and disgorgement of the excessive amounts of premiums); <u>Winn v. Alamo Title Ins. Co.</u>, 372 F. App'x 461, 463 (5th Cir. 2010) (affirming dismissal of plaintiff's Texas state law claims against title insurance company based on the filed-rate doctrine); <u>Schilke v. Wachovia Mortg., FSB</u>, 820 F. Supp. 2d 825, 835–36 (N.D. Ill. 2011), <u>aff'd on other grounds sub nom.</u> <u>Cohen v. Am. Sec. Ins. Co.</u>, 735 F.3d 601 (7th Cir. 2013) (collecting cases applying filed-rate doctrine in the insurance industry); <u>Schermer v. State Farm Fire & Cas. Co.</u>, 721 N.W.2d 307, 313 (Minn. 2006) (collecting cases applying filed-rate doctrine to insurance rates).[2]

---

[2]The Eighth Circuit has examined whether the filed-rate doctrine applies to bar claims against insurers in light of Missouri insurance regulations, however, the claims involved were federal claims, not state law claims.  <u>Saunders v. Farmers Ins. Exch.</u>, 440 F.3d 940 (8th Cir. 2006), <u>aff'd,</u> 537 F.3d 961 (8th Cir. 2008).  In <u>Saunders</u>, the plaintiffs alleged that they were unlawfully discriminated against under the Fair Housing Act and 42 U.S.C. §§ 1981 and 1982, because they were being charged higher insurance rates based on race.  The Eighth Circuit reversed the lower court's ruling that the filed-rate doctrine applied to bar the plaintiffs' claims for damages.  The reversal, however, was not based in a finding that Missouri's insurance regulations were not comprehensive enough, or that state regulators lacked sufficient authority over insurance rates.  Rather, the Eighth Circuit found that because the plaintiffs were bringing federal race discrimination claims, issues of the Supremacy Clause were involved.  <u>Id.</u> at 946.  It explained that, in general, a state agency's approval of rates limits a court's power to determine the reasonableness of the rates, but it does not act as a bar to federal discrimination claims.  The Eighth Circuit wrote that the district court "erred in invoking the judicially created filed-rate

Plaintiffs oppose application of the filed-rate doctrine under Missouri law, arguing that the doctrine applies only if the rates have been "approved" by a state regulatory agency, and LTC insurers file their rates with Missouri's Department of Insurance for informational purposes only. Plaintiffs argue the state agency merely accepts LTC rates and, therefore, the filed-rate doctrine does not apply in Missouri.   The Court does not find Plaintiffs' argument to be persuasive.

The fact that Missouri's regulatory agency "accepts" rates and does not "approve" them is not determinative of the issue, because the distinction is a matter of semantics.   As detailed above, Missouri has a comprehensive regulatory scheme for LTC insurance, and the Missouri Director of Insurance is charged with ensuring compliance with Missouri's insurance statutes and regulations, including reviewing initial rate proposals and rate increases for LTC policies.   Mo. Code Regs. Ann. tit. 20, § 400-4.100(8) & (18).   While the regulations do not use the word "accept," the Director can reject rate filings and require additional documentation or even rate adjustments.   Id. Moreover, if the Director believes that a violation of the statute or regulations has occurred, he or she has the authority under Missouri law to sanction the insurer by requiring it to cease using the improper rate, imposing a penalty and/or suspending its license to do business in the state.   Mo. Rev. Stat. § 379.361.

MetLife's rate increase filing for the Missouri policies at issue in this case, which was referenced in the Complaint and attached as an exhibit to Plaintiffs' Memorandum in Opposition to MetLife's Motion to Dismiss, illustrates the fact that Missouri's Director of Insurance has the authority to reject filings for rate increases and require adjustments.[3]   (ECF No. 21, Ex. A).   The

---

doctrine to restrict Congress's broad grant of standing to seek judicial redress for race discrimination."   Id.

[3]When considering a motion to dismiss or for judgment on the pleadings, "the court must generally ignore materials outside the pleadings, but it may consider some materials that are part

Director accepted MetLife's proposal for rate increases in 2016, but only after the state agency initially rejected MetLife's filing because there were concerns that the rate increases that MetLife was proposing were so great that they would cause significant lapses in policies making the remaining polices unviable going forward.   (ECF No. 31, Ex. 1 at 12).   MetLife was required to file an amended or supplemental report with revised rates for smaller rate increases over a longer period of time.   (Id.)   Under the regulations, the Director has the authority to determine what is a reasonable rate for LTC policies, in that the Director can reject proposed rates and require adjustments.   The fact that the regulations do not use the term "approve" is not determinative for application of the filed-rate doctrine.

Finally, the case upon which Plaintiffs rely to support their argument, Lafollette v. Liberty Mutual Fire Insurance Company, 139 F. Supp. 3d 1017 (W.D. Mo. 2015), found the filed-rate doctrine was inapplicable not because insurance rates had not been approved, but because the case involved interpretation of policy terms.   The plaintiffs in Lafollette were challenging application of a deductible to the payment for losses.   In examining the issue, the court noted that it was not being called upon to make "any conclusions regarding the propriety of the content of the [p]olicy or the overarching rate scheme."   Id. at 1026.   It also stated that the did not challenge the amount of their premiums or the amount of the deductible, and the court was not called upon to make

---

of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings."   Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal punctuation and citations omitted). When deciding Rule 12(b)(6) and (c) motions, courts may rely on matters within the public record.   Id. (quoting State ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir. 1999)).   See also Blakley v. Schlumberger Tech. Corp., 648 F.3d 921, 931 (8th Cir. 2011) (district court did not err in considering plaintiff's EEOC charge in ruling on defendant's motion to dismiss); Faibisch v. Univ. of Minnesota, 304 F.3d 797, 802–03 (8th Cir. 2002) (same).   MetLife's filings with Missouri's Department of Insurance are public records and were specially referenced and quoted in the Complaint, (ECF No. 1 at 6-7), and, therefore, the Court may properly consider them.

"findings or conclusions regarding the propriety of the means by which the insurance rates were determined or the deductible structure."   Id. at 1026.   Simply put, the case did not turn on whether the Missouri Department of Insurance approved or accepted insurance rates.

Plaintiffs also argue that the filed-rate doctrine does not bar their claims because they are not challenging the rates MetLife charged, but rather the fraudulent misrepresentations the company made in the policies and Inflation Rider.   Again, the Court finds Plaintiffs' argument unconvincing.   The alleged misrepresentations relate directly to insurance rates, and Plaintiffs would not be bringing suit unless their premiums were raised based on those increased rates.   As Plaintiffs state in their complaint, "[t]he heart of MetLife's misconduct is the sale of the [Inflation] Rider to fraudulently justify the deliberate and unwarranted increases in MetLife premiums for long-term care policyholders."   (ECF No. 1 at 10).

Plaintiffs allege that MetLife knew at the time it sold the policies that it would determine future rate increases based on projected future losses, and the increased daily benefits promised to purchasers of the Inflation Rider would generate losses, which MetLife planned to use to justify raising premiums on all purchasers.   According to the Complaint, MetLife's statement that "[y]our premium is not expected to increase as a result of the benefit amount increases provided by this Rider" was false.   (Id. at 11).   Under Missouri's insurance regulations, however, MetLife was required to offer inflation protection to its LTC policyholders.   And the language of the Inflation Rider and the rates associated with it were not only with filed with, but were reviewed for compliance and accepted by the Department of Insurance.   In fact, the very language of the Inflation Rider Plaintiffs contend is false – "[y]our premium is not expected to increase as a result of the benefit amount increases provided by this Rider" – is required by Missouri's LTC regulations.   No matter how Plaintiffs attempt to frame their claims, it is clear they are asking the

18

Court to review rates that have been filed with and deemed reasonable by the Missouri Department of Insurance, which is exactly what the filed-rate doctrine was designed to prohibit.

It is also apparent from the damages Plaintiffs seek that they are making a collateral attack on filed rates, and the filed-rate doctrine applies.   Plaintiffs allege that they suffered damages in the form of premiums paid for the Inflation Rider and the increased premiums they paid on their policies, and ask for the disgorgement of all the premiums they, and those similarly situated, paid for the Inflation Rider.   (ECF No. 1 at 15, 17, 18-19, 21).   In short, Plaintiffs are seeking a refund of the premiums they paid, which is expressly prohibited by the filed-rate doctrine.   As discussed in detail above, asking a court to determine what a reasonable rate would have been and to require a credit or refund of any amount collected in excess of this amount is retroactive ratemaking, which is prohibited by the filed-rate doctrine.   Agnew, 567 S.W.3d at 662 (citing Lightfoot, 236 S.W.2d at 353).   The filed-rate doctrine "prohibits a party from recovering damages measured by comparing the filed rate and the rate that might have been approved absent the conduct in issue." Id.

Plaintiffs attempt to avoid application of the filed-rate doctrine by arguing that they are asking for injunctive relief.   In addition to money damages, Plaintiffs request injunctive relief, but they request the "[i]mposition of a constructive trust, an order granting recessionary [sic] and injunctive relief and other such equitable relief that the Court deems just and proper."   (ECF No. 1 at 21).   The request is short on specifics, but it appears Plaintiff's request for injunctive relief involves some sort of rescission, and a refund of premiums paid.   This form of relief is not allowed under the filed-rate doctrine.   Agnew, 567 S.W.3d at 662.   Plaintiffs' request for injunctive relief, which is in addition to their claim for monetary damages, does not block application of the filed-rate doctrine.

Finally, Plaintiffs' argument that the filed-rate doctrine does not apply to fraud claims is unavailing. A Missouri court applying the filed-rate doctrine in the utilities context held that the filed-rate doctrine extends to claims of fraud. Bauer v. Sw. Bell Tel. Co., 958 S.W.2d 568, 570 (Mo. Ct. App. 1997). It stated, "courts that have considered the fraud issue almost unanimously have 'rejected the notion that there is a fraud exception to the filed-rate doctrine,'" and "[t]he rationale behind applying the filed-[rate] doctrine when there are allegations of fraud is to prevent 'discrimination in rates paid by consumers because victorious plaintiffs would wind up paying less than non-suing ratepayers.'" Id. at 570 (quoting Wegoland Ltd. v. NYNEX Corp., 27 F.3d 17, 20-21 (2d Cir. 1994)). The fact that Plaintiffs have pleaded claims alleging fraudulent conduct does not bar application of the filed-rate doctrine under Missouri law.

In sum, the Court finds the claims in Plaintiffs' Complaint are a collateral attack on MetLife's rate filings and the Missouri Director of Insurance's review and acceptance of those filings. In seeking a refund or disgorgement of the premiums they paid, Plaintiffs are necessarily asking this Court to evaluate what the reasonable rates would have been for the Inflation Rider – which was required under Missouri's regulations – absent MetLife's alleged misconduct. The Court believes this is retroactive ratemaking, and that the Missouri Supreme Court would extend the filed-rate doctrine to bar Plaintiffs' claims under Missouri law.

### 3.    Illinois law

To the extent that Illinois law applies to Lucia Bott's claims because her policy was issued by the State of Illinois and is subject to that state's insurance regulations, the Court finds that the filed-rate doctrine would also apply and bar her claims. Courts examining the filed-rate doctrine under Illinois law have found that it is not limited to utilities, but that it applies in the insurance context. See e.g., Schilke, 758 F. Supp. 2d at 560–61 (finding state breach of contract or breach

20

of fiduciary duty claims seeking damages against insurer were barred by the filed-rate doctrine); Anzinger v. Illinois State Med. Inter-Ins. Exch., 494 N.E.2d 655 (Ill. Ct. App. 1986) (finding there was no cause of action for excessive premiums paid because Illinois insurance code provided that medical malpractice rates became effective on filing with Illinois Director of Insurance); but see Corbin v. Allstate Corp., 140 N.E.3d 810, 815 (Ill. Ct. App. 2019) (filed-rate doctrine does not apply to claims related to automobile insurance policy "in light of Illinois's unique open competition environment in the area of auto insurance rates).[4]

Illinois also has a comprehensive insurance regulatory scheme.  Illinois statutes and regulations "empower the [Illinois Department of Insurance] to investigate, order the cessation of, and impose penalties for the use of any unfair or deceptive act or practice by those engaged in the business of insurance. . . .  Those provisions encompass and provide for [the Illinois Department of Insurance's] authority to disapprove rates, and thus are covered by the filed-rate doctrine."  Schilke, 758 F. Supp. 2d at 560–61 (citing 215 Ill. Comp. Stat. Ann. 5/423-5/427, 5/429, 5/431).  With regard to LTC insurance specifically, Illinois regulations are substantially similar to Missouri's regulations.  See Ill. Admin. Code tit. 50, § 2012.10-150.  LTC insurers in Illinois must file their initial rates with the Department of Insurance with actuarial memoranda supporting the proposed rates and a basis for their "expectation" that the proposed premiums are

---

[4] Citing to Gunn v. Cont'l Cas. Co., No. 18 C 3314, 2019 WL 10271173, at *1 (N.D. Ill. Sept. 3, 2019), rev'd and remanded, 968 F.3d 802 (7th Cir. 2020), MetLife asserts that one federal district court has already applied the filed-rate doctrine in Illinois to bar state law claims challenging an almost identical inflation rider in the LTC insurance context.  The district court's decision in Gunn, however, was overturned by the Seventh Circuit Court of Appeals, but not because the filed-rate doctrine did not apply.  Noting that most states have adopted versions of the filed-rate doctrine, but that they vary in breadth and force, the appellate court found it was reversible error for the district court to have failed to conduct a choice of law analysis.  Gunn, 968 F.3d at 805–06.  The Seventh Circuit reversed and remanded, charging the district court with determining the threshold question of choice of law.

being set at a rate that would not require future rate increases.   Id. § 2012.64.   LTC insurers in Illinois must also file for rate increases, and there are regulations as to the requirements for the calculation of the proposed rate increases.   Id. § 2012.112.   Proposed increases in LTC rates can be rejected by the Director of Insurance, who can require additional documentation or adjustments.   Ultimately, the Director of Insurance must approve increases in rates for LTC policies.   Id. § 2012.112(d).   Additionally, under Illinois regulations, insurers must offer their LTC policyholders inflation protection that provides for automatic benefit increases at a premium that the insurer "expects to remain constant."   Id. § 2012.80.   And as in Missouri, one of the options that meets this requirement is a 5% compound interest rider, like the Inflation Rider at issue in this case.   Id.

In light of Illinois insurance regulatory scheme, case law applying Illinois law, and cases applying the filed-rate in other states, it is the opinion of this Court the Illinois Supreme Court would extend the filed-rate doctrine to claims involving LTC insurance.   Plaintiffs' arguments opposing application of the filed-rate doctrine are as unavailing under Illinois law as they are under Missouri law.   See Schilke, 758 F. Supp. 2d at 560–61 ("whether the [Department of Insurance] has the authority to set [or approve] property insurance rates is irrelevant so long as it has the power to disapprove such rates."); Horwitz ex rel. Gilbert v. Bankers Life & Cas. Co., 745 N.E.2d 591, 605 (Ill. App. Ct. 2001) (fraud is not an exception to the filed-rate doctrine). The Court finds that Lucia Bott's claims, to the extent they are governed by Illinois law, are also barred by the filed-rate doctrine.

### B.     Exhaustion of Missouri's Administrative Process

In the alternative, the Court finds the plaintiffs' claims in this case that are governed by Missouri law should be dismissed for failure to exhaust administrative remedies.   Under Missouri

law, courts apply the exhaustion of administrative remedies doctrine, "which provides that where a remedy before an administrative agency is available, relief must be sought by exhausting this remedy before the courts will act." Lederer v. Dir. of Div. of Aging, 865 S.W.2d 682, 684 (Mo. Ct. App. 1993) (citing Sperry Corp. v. Wiles, 695 S.W.2d 471, 472 (Mo. 1985)(en banc), State ex rel. Oakwood Manor Nursing Ctr. v. Stangler, 809 S.W.2d 90, 92 (Mo. Ct. App. 1991)).   Where a plaintiff fails to exhaust available administrative remedies before filing suit, the court lacks the authority to grant relief.   McCracken v. Wal-Mart Stores E., LP, 298 S.W.3d 473, 476–77 (Mo. 2009)(en banc).

The Missouri legislature had afforded an administrative remedy for claims against an insurer relating to "any rate charged, rating plan, rating system, or underwriting rule."  Mo. Rev. Stat. § 379.348.   The statute provides that an individual may request an insurer "to review the manner in which the rate, plan, system, or rule has been applied with respect to insurance afforded him." Id.   If the request is not granted or if the individual disagrees with the action, the individual "may file a written complaint and request for hearing with the director."   Id.   Under certain circumstances, the director may deny the hearing, but if the director finds that the complaint charges a violation of Missouri's insurance laws, and the individual "would be aggrieved if the violation is proven," then the director is to hold a hearing.  Id.   The director may also impose monetary penalties.  Shqeir v. Equifax, Inc., 636 S.W.2d 944, 949 (Mo. 1982)(en banc).

Plaintiffs do not dispute that Missouri has administrative procedures for resolving complaints related to rates, rating plans, and the underwriting of LTC polices.   In opposing MetLife's motion, Plaintiffs argue that they were not required to pursue administrative remedies under Mo. Rev. Stat. § 379.346 because their claims are not attacking the "rate charged, rating plan, rating system, or underwriting rule followed or adopted by an insurer or rating organization," and

23

instead are attacking the truthfulness of the representations MetLife made about the Inflation Rider. Plaintiffs' argument is unpersuasive.  The very language Plaintiffs are challenging in the LTC policy and Inflation Rider – "[y]our premium is not expected to increase as a result of the benefit amount increases provided by this Rider" – is required by Missouri's LTC regulations.  Mo. Code Regs. Ann. tit. 20, § 400-4.100(11).  MetLife submitted this language, the policy, and Inflation Rider for agency review.  More importantly, the misrepresentations Plaintiffs allege MetLife made relate directly to rates: Plaintiffs are bringing suit because MetLife was allowed to increase their rates and charge Plaintiffs more in premiums.  This is not a case of policy interpretation or coverage.  Plaintiffs are seeking a refund or disgorgement of the premiums they paid, which relates to "rates, rating plans, and the underwriting" of MetLife's LTC polices.  Mo. Rev. Stat. § 379.348.

The Eighth Circuit recently affirmed the dismissal of a case against an insurance company for the insured's failure to bring its claim before the director of the Missouri Department of Insurance.  Alissa's Flowers, Inc. v. State Farm Fire & Cas. Co., 24 F.4th 1212, 1214 (8th Cir. 2022).  In Alissa's Flowers, the insured claimed that because of the reduced exposure to liability resulting from COVID-19 and the government's shutdown of retail businesses, it had overpaid in insurance premiums for a policy that was effective starting March 2020.  The plaintiff's complaint sought reimbursement for the alleged overpayment of insurance premiums.  In affirming the dismissal for failure to exhaust administrative remedies, the Eighth Circuit found the plaintiff's case was a challenge to insurance rates, and it was required to file a claim with the director of the Missouri Department of Insurance under Mo. Rev. Stat. § 379.348.

Plaintiffs attempt to distinguish this case from Alissa's Flowers by arguing that like the plaintiffs in Lafollette v. Liberty Mutual Fire Insurance Company, 139 F. Supp. 3d 1017 (W.D. Mo. 2015), they are challenging a misrepresentation in a policy, not the rates.  As discussed in detail

24

above, the Lafollette case involved policy interpretation – the application of a deductible to the payment of benefits – which is not analogous to the case at bar.   Here, Plaintiffs are challenging increases in their premiums and request as a remedy the amount they paid in premiums for the Inflation Rider.   The Court finds Plaintiffs' claims squarely relate to the rates of MetLife LTC policies.   As to the policies that are governed by Missouri law, Plaintiffs were required to seek administrative relief pursuant to Mo. Rev. Stat. § 379.346 before filing suit in this Court.   Alissa's Flowers, 24 F.4th at 1216.

In the alternative, the Court dismisses Plaintiffs' claims directed to policies governed by Missouri law, because the Court lacks authority to grant relief as Plaintiffs did not first pursue administrative relief with the Missouri Department of Insurance.   Id.

### V.      Conclusion

In sum, the Court find Plaintiffs' claims are barred by the filed-rate doctrine.   The doctrine applies to the facts of this case under both Missouri and Illinois law.   Alternatively, Plaintiffs' claims that are directed at policies governed by Missouri law are dismissed for failure to exhaust administrative remedies under Mo. Rev. Stat. § 379.348.   The Court declines to address whether the Complaint states a claim for breach of the covenant of good faith and fair dealing, (Count IV), because any such claim would be dismissed under Illinois and Missouri's filed-rate doctrine and/or for failure to exhaust Missouri's administrative remedies.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Metropolitan Life Insurance Company's Motion to Dismiss is **GRANTED.**   [ECF No. 20].   The Court will issue a separate Order of Dismissal.


_Ronnie L. White_
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**


Dated this __3rd__ day of February, 2023.

!

!
!
!
!

26